Just as a preliminary matter, let me point out the obvious, which is Judge O'Malley is not physically present this morning, but she is listening to the arguments and is fully participating in this case. Rest assured. Anyway, good morning. The first case for argument is 18-2048 in Re JC Hospitality. Thank you, Your Honor. Jill Petrini for the appellant. What I'd like to start with, obviously we've got two refusals here, genericism and descriptiveness. And then the last part of descriptiveness is whether the 2F evidence was sufficient or not. In terms of genericism, what I'd like to note is both the appellee's brief and the TTAB decision consistently refer to the Class 41 identification of services as simply entertainment services. And that's not the identification. The office, the Patent and Trademark Office is trying to expand the identification. So you would say, and your amendment or addendum would be entertainment services, namely live musical performances, shows and concert, and nightclub services. Correct. Because entertainment services is quite broad. I mean, I can entertain myself by going to Marshall's at night. Although nightclub services is a little harder because that's where there's an arguable overlap maybe between Class 43 bar, maybe. Yeah. I think of a nightclub as dancing, music, that type of thing. I don't see it as a bar. A bar, to me, is different than a nightclub. So would you say that, at least starting with the generic question, that you've got a much stronger case with respect to Class 41 than you do with Class 43? Is that the point you're making? I would agree. Yes. I would agree with that. And the burden of proof for the office is clear and convincing evidence. There has to be a substantial showing with clear evidence to support that genericism refusal. And the substantial evidence burden ties back to the, our standard ties back to the burden of proof. So it's not a preponderance. And so for the Class 41 services in particular, what we have for evidence submitted by the office is two definitions that reference nightclub. Two references to entertainment generally, which I would submit are not relevant for the reasons we just discussed. And then at best, two references to music, but it's combined with the restaurant, a soul food restaurant and one other one. And what we have in the record for the appellant is we have multiple unsolicited uses of the joint to refer to the appellant's venue. And that puts us more in the category of the Merrill Lynch case, where it was cash management account. And many of the references that were submitted in the record actually identified Merrill Lynch as the source. There's no third party use identified in the record that identifies another music venue or another nightclub, another concert hall called the joint. None. None whatsoever. Well, let me, so let's turn to the merely descriptive, because that's perhaps a little harder for you than the generic. So you're, you offer evidence of acquired distinctiveness, but that evidence says joint at Hard Rock. So that's a little different than just doing joint, right? Well, two things on that, because I went over the revised Smith declaration again yesterday obviously to prepare. And the evidence primarily refers to the joint by itself. And that's, the revenue is identified just as revenue for the joint venue. It's not for the hotel overall. And that's the same with the advertising, they could parse that out. There's a separate entrance. You can come through the, you come through the hotel to get to the venue, but you can also see the venue from the outside. So they are, because that's the largest venue at the hotel, they're able to track that revenue separately and advertising, which they did. And the visitors per month were for the joint on the website. It has its own path that you can then track the visitors to that specific entry point on the website. And the Twitter social media page is called the Joint Las Vegas. And anyone who's been to Las Vegas knows that people don't use physical addresses to say where something is. You use what the name of the hotel or casino is. That's just, oh, where's that? That's at MGM. Oh, that's at Hard Rock. So the at is more of a physical location. Okay. Let me... How about the marketing expenditures of $29? Are they drawn specifically to the restaurant? To the... Yeah, the venue, yeah. Yes, they are. But what about, what does that do to the two classes, 41 and 43? Well, you know, it's the venue serves food and beverage. So there's not a separate restaurant at the venue. So it's like a, it's not a multi-class application. We have separate applications. But the food and beverage is offered at the venue. There's not a separate restaurant at the venue. So if I'm sitting at a table and I want to get something to eat, I can do that. Or if I go to the bar and I want to get something to eat while I listen to the show, I can do that. So that's, and everything is tied to, it's segregated to the joint as in its own separate P&L. But is that because it's viewed as a restaurant or a place to get a drink, or is it really a concert hall? Concert. More of a concert. So nobody would necessarily go in there for a drink, pick that as a drink. I mean, is the cost of, is there a cover charge getting in, is there... Oh yeah, yeah. There's a ticket. For example, I saw Mary J. Blige there in August, and I have a ticket, and I have to have a concert ticket to get in, and once I get into the venue, I can have food or beverage if I want. Let me, just to follow up on Judge Reyna's question with regard to the revenue and the advertising numbers and so forth. I don't really have an absolute firm view of the answer to this question, but is it your view that under the law, those numbers don't stand by themselves, that you have to do a comparison to give them any meaning? Like if it's 10 million, but it's in an industry where everybody is in the gazillions of dollars, then that seems less significant than if the comparative number is very small for competitors. So just help me out on how we evaluate those factors. Yeah, I'm glad you raised that, because I was thinking, what's my highlight reel, and that's one of the highlight reels that I wanted to talk to you about that today. That makes an impossible burden for an applicant to submit 2F evidence, because how would I get that information unless it was publicly available of a competitor? I don't have subpoena power in an ex parte application. I might be able to find some information on the internet, or I might not. There's no way to really garner that information to provide it, and I have not seen a case from this court, its predecessor or the TTAB that requires that, that we have to have this type of evidence of competitive analysis to show. But it does make the numbers meaningful. For example, one might even have a strong case if their revenue and advertising numbers are a million dollars, but that doesn't strike anyone as hard. I mean, it's very hard in the absence of comparison. To some extent, the appellant may have a much tougher road if it's not a comparative number that we're using, right? Well, yeah, I would agree with that, but the issue is whether you can actually obtain that information. And in this context, in an opposition or cancellation proceeding, you could get that because you have the power of discovery. You don't have the power of discovery in an ex parte application to get that. What about public records, like SEC files and things of that nature, or even private market research? If you could, yeah, if it's a public company, then you would be able to get that information, but a lot of venues are not owned by public companies. And what would be the comparison? Would it be, would I compare Dodger Stadium, which puts on concerts, to a 4,000 seat venue in Las Vegas? It would be, that wouldn't be a fair comparison because the number of people. But it would give you something to argue with. Right. Well, we do, there is evidence of the record that does give some comparison, and that in the Twitter printouts we submitted at appendix 162 to 171, named the best concert venue in Las Vegas. It was also best of Las Vegas awards three years in a row, and it was in the top 25 venues, and that was in the Yelp, somebody from Canada recognized that. It was top 25 venues in the United States by Billboard magazine, which is obviously sort of the bible of music publications. So, are all those go to the class 41 argument and not the class 43? Well, because it's one venue, it goes to both. Because I can't separate it out, there's no separate restaurant to go to that. It's all in one venue, effectively. So it has to go to both, because they're offering both at the same time, in the same location. One thing, but we are free, I mean, your arguments can be separated out, I guess, so the result here can come in, can divvy up the class, distinguish between the class 41 and the class 43, isn't that what you're saying? Yes, yes, I understand that. I just don't have a way to parse it out for you, given the nature of the venue on that. If there's, I have five minutes left for rebuttal. I did want to point out one thing before I sit down on the double entendre. There was a comment that there was, that our customers don't get the joke, and they do, and that's at appendix 208. There were two Yelp reviews, both from California. One says, first of all, don't be deceived by the exterior of this joint, no pun intended, or is there? But really, don't be fooled, because this place is freaking huge. And the person from San Francisco says, the only negative of getting out of the joint, ha ha, they herd you into the casino, which is way too small, and you feel claustrophobic. Prisons are notoriously small. There's no freedom. Clearly, people are getting the connection with the joint, versus, you know, being a prison reference. On that side. How do we apply the double entendre argument to the merely descriptive factor? Because it could still be merely descriptive, even if the term might be used to describe something else, right? Well, I'm running, I've got like four minutes left here, I'm lucky. Yeah, yeah. So, I interrupted myself, and got myself distracted, I apologize. Yeah, do you want me to recall the question? Yes, please. So, if it's, if one, you're right, if you're right, and some people might hear joint, think of a drug thing, and others might think of a jail, and others might think of a concert hall, isn't, that maybe goes to the argument of generic, but what does that do to the merely descriptive? Does that make it impossible to be merely descriptive, just because there might be another connotation that is associated with the term? Well, it's not just maybe another connotation, there definitely is a connotation, and we submitted that through the dictionary definitions, the articles, and you've got the Yelp reviews where they are making that connection, and it's not, a marijuana cigarette is never referred to as the joint, it's a joint, so the joint is very much a vernacular colloquialism for prison. So, in that case, it does take it out of the descriptiveness. Okay, but still, you've got prisons, and you've got restaurants, bars, and concert halls. Right, but I don't, I apologize, but I don't agree that the joint has any generic or descriptive qualities as to a nightclub, a concert hall, live music performance, there's just no evidence of it, there's two dictionary definitions, and that's it on that. So, I have two minutes left, if you have any, I'll sit down right here. Thank you. Good morning, if you may please the court. I want to start with the genericness refusal first. The public's, it's very clear that the public's understanding of the contested term can come from all sorts of different kinds of evidence, including dictionary definitions and publications, and the lens through which we view that evidence is the context of the goods and services that are identified in the ID of the application. Okay, so why don't we, I don't know if this is, where this comes from in the appendix, but I've got a list here in my bench book prepared by my clerk about all the definitions that were at issue in this case. Yes. So, and that goes to the generic stuff. So, we've got two different classes here, and the result may be different for the two different classes, but of all this dozen or more, I'm not seeing, I mean, a few of them have prison, like, or just building. The Oxford, American Heritage, Merriam-Webster, I mean, most of these don't help you. And the ones that arguably have something like a restaurant and bar, I'm not seeing where you have one that's a nightclub out of Collins. What are you getting to help you here, at least with respect, certainly with respect to class 41 and the dictionary definitions? I point to, I understand, I point to a number of definitions that we have here. The Oxford Dictionary says it's an establishment of a specified kind, especially one where people meet for eating, drinking, or entertainment. Okay. There's another one that's in Wiktionary that says the definition of joint is a restaurant, bar, nightclub, or similar business. Merriam-Webster talks about a place of entertainment. Collins English Dictionary talks about a bar or nightclub. So there's both, there's a lot of definitions from the dictionaries that apply to class 41 and class 43. And so the question here is... But more than not, don't, right? I mean, of the ones we've got, more than not, certainly with respect to a concert. You've got prison in Oxford. You've got, I don't know what the American Heritage, a cheap and disreputable gathering place. I don't know where that goes. You've got a building or dwelling, a prison, a particular place, a place or establishment, slang for prison. I mean, a dwelling or meeting place. Marijuana, cigarette, or an orthopedic joint. There's all sorts of different definitions. Yeah. But what you do in a case where you're looking at whether or not a mark is generic for a particular service is you look at it from the perspective of consumers who are looking at those services. And in the context of those services, which of those definitions resonates? And that's consistent with what Judge Friendly said in the Abercrombie case, you know, many decades ago, where he said, you know, a word can be generic for many different things. So if they were in a state where you could sell marijuana cigarettes and they called their store the joint, you know, that would be generic for that as well. So the fact that there are other definitions doesn't really matter because we have to focus on the goods and services that are listed in the application. So that really just, you know, tunnels in what you're going to be looking at in the context of these two services. Well, let me ask you, too. I'm struggling with, because I think there's a difference here between the classes. And so I'm struggling on how we evaluate and apply the tests to the different classes because restaurants, bars, I guess Class 41 does include nightclub services, which of necessity would necessarily, I think all of them at least, have a bar. Right. So there's some overlap. But to me, a concert venue with live performances is something different, substantially different than a restaurant or bar, right? It's a different thing. But if you look at the dictionary definitions, they define the word the joint, again, looking at the services here, as a place of entertainment. They have entertainment services, which they say are in the nature of musical concerts. And so the dictionary definitions do, in fact, cover what they are doing here. And there's also some evidence in the record of publications where people were writing about particular locations and saying that it's, you know, a restaurant where you can get live R&B and jazz bands on the weekends or a music restaurant joint is something that someone wants to open. These are things that... But again, there are very few, looking at the list here of those, the news article experts which were cited by the examiner, very few of them here have anything to do with concerts or necessarily music venues. Right. Right. I agree. More of them have to do with restaurants, which might have to do with the fact that there are more restaurants in the country than there are music venues. Yes. But be that as it may... But what if we were just looking at this case in terms of Class 41? How are we supposed to affirm the generic conclusion by the board and the examiner? Because of the evidence that's in the record, the dictionary definitions and the three or four things that talk about restaurants that also have music or entertainment, there is substantial evidence a reasonable person could have found the way the board did, particularly in light of the fact that this prison reference that they want to focus on, there is no evidence of that. So given a mix of evidence where there are three or four things in publications and the dictionary definitions on the one hand and nothing that really supports this prison definition on the other, it was reasonable for the board to have found on this factual matter that it was generic for the Class 41 services. Well, can you go through the news articles? Which ones? I'm just off the top. I'm not seeing the music concert thing in any of these. Sure. The Philadelphia Inquirer argument, which was at... There's basically two parallel records in the case. It was at Appendix 2. A music-slash-restaurant joint? Yeah, that person who wanted to open up a music-slash-restaurant joint. There is the Newark Star-Ledger article that talks about the joint to refer to a music that features entertainment from DJs, jazz, and R&B groups. So that's live music. There was another one that was the Mountain Democrat that talked about using the joint for a restaurant that has entertainment in the form, not of music, but of video poker games. Can I ask you... Just to interrupt you. I'm sorry to interrupt, but just because the time is limited. But your friend, I think, makes the argument with respect to these articles that many of them are not meaningful because it's not joint or even the joint that appears. It's Hawaiian joint, Manhattan joint, hamburger-and-sandwich-restaurant joint, and that that sort of cuts against you rather than for you. Well, I think that it supports us, just not as much as when the is with the joint. But it supports the definition of joint that the board found, which means a place of entertainment or meals or nightclubs. So it does support it. It's just not as direct a support as the ones that actually say the joint when referring to those places. So I don't think that it cuts against us at all. I think it's fully consistent with what the board found about what the word joint means in the context of the kinds of services we're talking about here. One of the things I wanted to clear up about the double entendre argument, and I think it's important because they kind of make the double entendre argument both for genericness and the descriptiveness refusal. All of the cases that they've cited where the TTAB has found that there was a double entendre, those were all 2E1 merely descriptiveness cases. In those cases, because you're looking at whether a mark is merely descriptive, when there is some other definition that's apparent from the mark itself and the goods and services we're talking about, and that other second meaning is not descriptive, then the mark is not merely descriptive. But when we have a case where there's genericness is at issue, the issue is whether or not the mark is primarily a source indicator or primarily talks about, identifies the class of goods. So there's an additional hurdle in using a double entendre argument when you've got a genericness refusal, because you not only have to show that there is a secondary meaning that's applicable to the goods and services, but you have to show it's the primary meaning. Because otherwise it's still primarily the generic meaning. And that's something I think that gets kind of lost in the way... Well, what if you're in an instance where you don't find that it's generic, but you can find it's merely descriptive? So you don't have behind you the fact that it's generic. Right. So in a merely descriptive case, you still have to find that in the context of the goods and services, which are entertainment services for live music, nightclub services, and in Class 43, the restaurant services and bar services, you have to find that consumers looking at just the words, the joint, would conjure a prison. And that there is no... There's a lot of argument about that here, but there is no evidence in the record that that is in fact what people do in the context of the joint for these classes of services. And that's what the board has... What about the conflict between the two classes? That's what I'm struggling with a little. Maybe it's just not... I mean, it's almost like you could win on 41 on the concert because it has a more generic or descriptive meaning that deals with restaurants, but not with concert halls. Can we analyze this case by differentiating between concert venues and things that are just restaurants? Well, I think you do have to do that because there really are two classes, and I would admit that there's certainly more evidence, as you pointed out, that has to go to restaurants being called joints in the record. Or bars. Or bars. But I still think that what the board found here with respect to Class 41, the music venue services, that there is substantial evidence that supports what the board did. And we can see that because there isn't any evidence for them to have found the other way. And so there was really just sort of a one-sided record here. How could a reasonable person have found otherwise? Well, the burden is on you. I mean, that's... the burden is on the government here. Yes. Let me just ask you on the merely descriptive and on all of the evidence they put on with respect to revenues and advertising and so forth. In certain respects, standing alone, it seems substantial. Yes. So what's the problem? The problem, as we pointed out in our brief, is that when they showed the exemplars of these different things that were talked about in the declaration that were... the Twitter, the Facebook, the Yelp reviews, the TripAdvisor reviews, all of these things also prominently featured the Hard Rock Hotel and Casino mark. And this court and other circuits have been very clear that when you're giving evidence of advertising revenue, you know, look how much we've promoted this mark. People now know it's associated with us. That you've... it's got to be something where the inference is from that, that you can say that that particular mark, the joint, is what people are... giving the... is the impression that's coming from this advertising. But when there's other marks in there or maybe a different mark with additional words to it, then that inference gets kind of torn a little bit. It's harder to make that leap. So that's what the board was doing here when it gave less weight to that evidence. Even if it's just a location? I mean, the joint in Washington. Is that different than saying the joint at the Hard Rock Cafe? I mean, is it just a location, venue kind of thing? I'm not sure I'm... I understand Your Honor's question. But you're saying the joint go... you're saying you mitigate... it mitigates... am I understanding you correctly? It mitigates the impact of the advertising and all of that. Yes. Because it's not just the joint. It's associated with the Hard Rock Cafe. Right. The consumer is getting both marks. So your friend started her argument by suggesting that, you know, those who know Vegas appreciate that whether it's Hard Rock or something, it's kind of almost an address. It's so there could be a joint in various casinos and you just put in their location. So that's what I'm going by. Yeah, I don't think there's anything in the record that bears on that argument. I mean, that would be something maybe that could have been fleshed out here, but it wasn't an argument that was made or supported below. And so there really is nothing to support that in the record as far as I can tell. So with respect to the acquired distinctiveness, I think if you... particularly if you look at it in terms of sort of as a comparator, the case 20 years ago in the Boston beer case, where the annual revenues for advertising and for sales were about what the same as the numbers that they're giving you here for a period of several years. And even then, because of the descriptive nature of the market issue in that case, that wasn't enough to say that the board was unreasonable in not finding acquired distinctiveness in that case. Okay, can I just take you back, I'm sorry, to the generic issue that we started talking about? You do more of these cases than I do. What we're left with, at least with respect to Class I and entertainment, is you've got two, tops three, I think, dictionary definitions that even could arguably cover Class 41. How do we evaluate that? And you've got numerous others that don't, that say something else, that define joint as being something else. How do we ever... how could we find generic, at least with respect to Class 41, where if you scan all the dictionaries, only two of 15 have the suggestion in them? Well, I think that the dictionary... there are other dictionary definitions, and because we have two or three of them here, that shows that that is what the public thinks of when it hears joint. Well, except two or three, but we've got 15 others that say something else, whether it's a prison, whether it's a dwelling, or whether it's just a restaurant. You have to look at these... the way this court, and the way the board, and the agency look at these cases is you don't just look to see, are there multiple definitions, and look at all the different ones. You have to look at it in the context of people who are looking to get those kinds of services. And in that context, you want to go to a concert, you want to go to a restaurant, you're thinking about that, and you see the joint, you're not going to think of prison in that context. Now, one... Well, let me ask you, okay, so you're thinking about concerts. Go down the list of definitions. I mean, you have to sort of search pretty deeply to come up with anything. I mean, they don't mention the word concert. At most, the ones you cited talk about entertainment or talk about nightclub or similar business. That's all you've got in the definitions, and you're trying to make a case of generic. Well, they talk about places of entertainment, and in the very definition of their goods and services, they say entertainment services, specifically musical concert entertainment. So the dictionary definitions precisely cover what they are doing. It may cover other kinds of entertainment services, and that's why, for example, I talked to you about the restaurant that had the video poker entertainment, but there's also... The entertainment does cover these kinds of musical entertainment services. And you have... Any of these other definitions are not relevant when you look at it in the context of these particular goods and services, and that has to be the way this is. Otherwise, you're going to have a situation where as long as there is any other definition that could come up even wholly apart from these kinds of services, you're not going to have genericness, and genericness is about protecting competition, protecting competitors from using these words. I think you're kind of trying to overstate it, and it's worrying me a little, because if you have any other... My suggestion looking at this list is that there's one other that doesn't cover entertainment services. So we're talking about two different things. I'm not suggesting a situation where you have... You can find some other definition out of 40 that does something other than entertainment services. That's not this case, right? I think it is kind of this case, because here you have all sorts of definitions that don't apply through the legal lens that you have to use, which is the context of these goods and services here. So once you use that lens, everything else becomes irrelevant unless there is evidence in the record, which we don't have here, that shows that despite the fact that these are music and nightclub and restaurant services, people nevertheless conjure up prison. And there is nothing that supports that in the record here. Thank you. Thank you. A couple points. This issue of no evidence of the definition of prison in the record is just simply not true. We've got seven definitions that use... that define joint or the joint as prison. Two of them use the particular, which is the trademark here, and that's the Online Slang Dictionary and Oxford Dictionary. Then the Wikipedia definition says it's always used with the. So it's not joint by itself, it's the joint. And we do have evidence of the record in terms of articles and I cited the customers who actually do get the joke. So we do have evidence in the record of that. And also the relevant public here, particularly for the Class 41 services, are people who go to music shows. And people who go to music shows like music by definition. That's why they pay to go in. And it's common knowledge that and we have evidence of Folsom Prison that Johnny Cash did a live performance in the late 60s at Folsom Prison in California and recorded... And you're right, I forgot about the movie. But I knew about it and I was born in the early 60s and I knew about that concert that went on. And that there was an album, at least one, maybe two albums recorded at that. So the connotation between music and prison for those people who like music shows is there. So we have that. Another point that was made by Mr. Cascandre was that we need to show secondary meaning for the double entendre for the identified goods or services. There's no requirement of a showing of secondary meaning for the identified for the double entendre with the identified services. In fact, the cases really don't even talk about that. They talk if someone does by chance make the association. That was in the Sugar and Spice case. The court said to the extent that the nursery rhyme is familiar to one seeing or hearing the mark, his recall is undoubtedly stimulated to make the association with everything nice. So there wasn't an actual showing that they made. It's like if they do it. And that's the same thing with the No Bones About It case. And the hard line, there was no evidence to show that there was some connection between the hard line, meaning an attitude of toughness, and mattresses. So the office is trying to create evidentiary hurdles that are not in the case law to support their position. And the other point I would make, and this is going back to, this applies to both Class 41 and 43, is the joint is too vague of a term. You really don't know what you're talking about without the food modifier. When we're talking about restaurant, it's a soul food joint, it's a burger joint, it's a Hawaiian joint. And with respect to the what you're talking about, you have it's a pun, and you can figure out that it's a pun, but you know it's not the concert hall. That's not the name of it. And in fact, our Wikipedia entry has the joint parenthesis music venue, so people know what it is. So with that in mind, I don't see how the joint can be generic for either Class 41 or 43. It's certainly not descriptive for this, and we've got all the evidence that shows this association. The difference between that beer case, that was this, the mark was, it was crazy, it was Best Beer in America. And the issue was it was too laudatory, and there were so many other people, companies, that were using Best Beer in America, both before and after the applicant. And a lot of these cases come down to, is there a competitive need? Is there evidence in the record that others are using this and need to continue to use? There's no evidence in the record, certainly for Class 41, and for Class 43, whenever they use joint, the joint, it's always referring back to whatever the name of the restaurant was or the type of restaurant. So we would submit that it's too vague of a term to be either generic or descriptive, and we've submitted sufficient evidence of secondary meaning if the court finds that the descriptiveness refusal was sufficient on this. The office is trying to place a burden on applicants with this evidence that is just we would never be able to meet it. Thank you. We thank both sides, and the case is submitted.